# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| RACHEL HOLMES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FINANCIAL BUSINESS AND CONSUMER SOLUTIONS, INC., and JEFFERSON CAPITAL SYSTEMS, INC., <br><br> Defendants. | Case No.: 18-cv-227 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Rachel Holmes is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from her debts allegedly incurred for personal, family or household purposes, namely a consumer line of credit.

5. Defendant Financial Business and Consumer Solutions, Inc. ("FBCS") is a debt collection agency with its principal offices located at 330 South Warminster Road, Suite 353, Hatboro, PA 19040.

6. FBCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. FBCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8. FBCS is a debt collector as defined in 15 U.S.C. § 1692a.

9. Defendant Jefferson Capital Systems, LLC ("JCS") is a foreign limited liability company and debt collection agency with its principal place of business located at 16 McLeland Road, St. Cloud, Minnesota 56303.

10. JCS is engaged in the business of collecting debts, both owed to others and acquired after default, and incurred for personal, family or household purposes.

11. The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

12. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal

purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'").

13. The primary purpose of JCS's business, and JCS's principal purpose, is the collection of consumer debts. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and that '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (citing Pl.'s Reply Br.)).

14. JCS's website contains an "About Us" webpage, which states:

> Jefferson Capital is an industry-leading provider of traditional and unique recovery services for consumer charged-off accounts. Our clients include creditors and national debt buyers. We offer services such as a Payment Rewards Collections Program, purchasing and servicing of secured and unsecured bankruptcies, as well as traditional purchasing of distressed portfolios.

http://www.jeffersoncapitalinternational.com/us/about-jefferson-capital.html.

15. In addition to telephone and mail-based debt collection activities, JCS is a frequent litigant in Wisconsin courts. . A general search on Wisconsin Circuit Court Access ("CCAP") for JCS returns the error message: "Your request could not be processed. Your search has returned more than 5000 rows. Please try again."

16. CCAP shows that JCS *filed* 135 civil and small claims actions in Milwaukee County in January 2018 alone. Upon information and belief, virtually all or actually all of those cases are collection actions against Wisconsin consumers.

17. JCS is a debt collector as defined in 15 U.S.C. § 1692a.

3

# FACTS

18. On or about February 15, 2017, FBCS mailed a debt collection letter to Plaintiff regarding debt allegedly owed to JCS. A copy of this letter is attached to this complaint as Exhibit A.

19. The debt referenced in Exhibit A was incurred to purchase personal, family, or household goods.

20. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

21. Upon information and belief, Exhibit A is a form debt collection letter used by FBCS to attempt to collect alleged debts.

22. Exhibit A is the first letter that FBCS sent to Plaintiff with respect to Plaintiff's alleged debt.

23. In the section of the letter providing details of the Plaintiff's account, Exhibit A indicates that the "Outstanding Balance" is $1,503.08.

24. The following section indicates:

"We can accept this reduced amount under your preferred option:
1. Pay the full amount of $901.85 to us in one payment.
2. Pay $180.37 as a down-payment and the remaining balance of $721.48 30 days after your first payment is received
3. You may have an opportunity to split your settlement into 3 payments of $300.62 each. Call our office for details.

25. The first option for payment refers to the $901.85 as both a "reduced amount" and the "full amount."

26. The second option for payment likewise indicates that there would be a remaining balance of $721.48 after a payment of $180.37, which does not add up to the current outstanding balance of $1,503.

4

27. The unsophisticated consumer would be confused as to both the total balance of the account as well as the amount of the offer for settlement.

28. The third option compounds the confusion about the meaning of "full amount" by stating that "you may have an opportunity to split your settlement into 3 payments of $300.62 each" because a consumer who made three payments, each in the amount of $300.62, would pay a total of $901.86, not $901.85.

29. Such misrepresentations are material because they mislead the unsophisticated consumer about the amount and character of the debt. 15 U.S.C. § 1692e(2)(a).

30. The Seventh Circuit has held that a debt collector must state the amount of the debt without "obscur[ing] it by adding confusing other information (or misinformation)." *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 2000 U.S. App. LEXIS 12178 (7th Cir. Ill. 2000); *Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir. 2000); *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir. 1997).

31. Stating that a payment or sum of payments is payment in full when the amount is mathematically short of being payment in full is misleading and confusing to the unsophisticated consumer. Many consumers send payments that they believe to be payment of a debt "in full," only to be contacted months or years later by collectors seeking the leftover balance plus late fees, interest and other costs, sometimes in the hundreds or thousands of dollars.

32. Exhibit A is also confusing and misleading as to the date by which payment must be made to effectuate settlement.

33. Option 2 in Exhibit A states:

2. Pay $180.37 as a down-payment and the remaining balance of $721.48 30 days after your 1st payment is received

Exhibit A.

34. <u>Exhibit A</u> states:

> FBCS, Inc. is not obligated to renew this offer.

<u>Exhibit A</u>.

35. By imposing a deadline for payment of "the remaining balance" and stating that FBCS is "not obligated to renew this offer," <u>Exhibit A</u> represents to the unsophisticated consumer that time is of the essence in effectuating settlement.

36. Although <u>Exhibit A</u> represents to the unsophisticated consumer that time is of the essence, <u>Exhibit A</u> does not provide a settlement expiration date other than the deadline in Option 2 that the consumer must pay "the remaining balance of $721.48 30 days after your 1st payment is received."

37. Upon information and belief, the representation in <u>Exhibit A</u> that time is of the essence is a material false, deceptive, and misleading representation.

38. In the absence of an expiration date and alongside a statement that the debt collector is "not obligated to renew this offer," the unsophisticated consumer would understand the representation that time is of the essence to mean that FBCS could, and would, rescind the settlement offer at any time and without notice.

39. Upon information and belief, the debtor can settle the account for $901.85, or less, at any time.

40. In order to preserve debt collectors' negotiating positions and prevent the settlement process from disintegrating, while still enforcing the congressional mandate prohibiting debt collectors from making false, deceptive, and misleading representations, the Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory*, 505 F.3d 769 at 775-76.

41. While <u>Exhibit A</u> tracks this safe-harbor language, without an expiration date, the language does not have its intended effect.

42. As a practical matter, the unsophisticated consumer is not an FDCPA lawyer. She does not know that the purpose of the statement that "we are not obligated to renew this offer" is to make her "realize that there is a renewal possibility but that it is not assured."

43. Instead, where the debt collector states that it is not obligated to renew an offer but does not include an expiration date by which payment must be made, the unsophisticated consumer would understand the safe-harbor language to mean that the offer was subject to revocation.

44. The unsophisticated consumer may even believe that the law requires a debt collector to include the Seventh Circuit's safe-harbor language *because* it will rescind the offer.

45. Without an expiration date, the unsophisticated consumer would interpret a debt collector's statement that it is "not obligated to renew" as an implied threat to revoke the settlement offer at any time and without notice.

46. Where the Seventh Circuit prescribes safe-harbor language, this language is not "blessed" as generally acceptable---rather, the Seventh Circuit has made it clear that its safe-harbor language applies only in the specific "type" of case addressed in the opinion and that very language may, in fact, violate the FDCPA under other circumstances. *Boucher v. Fin. Sys. of*

7

*Green Bay*, 2018 U.S. App. LEXIS 1094, at *17 (7th Cir. 2018) ("debt collectors cannot immunize themselves from FDCPA liability by blindly copying and pasting the *Miller* safe harbor language without regard for whether that language is accurate under the circumstances."); *Evory*, 505 F.3d at 775-76 ("we think the *present concern* can be adequately addressed . . ."); *Bartlett v. Heibl*, 128 F.3d 497, 501 (7th Cir. 1997) ("We commend this redaction as a safe harbor . . . for the kind of suit Bartlett has brought and now won. The qualification 'for the kind of suit that Bartlett has brought and now won' is important. We are not certifying our letter against challenges based on other provisions of the statute; those provisions are not before us."); *see also O'Chaney v. Shapiro and Kreisman, LLC*, 2004 U.S. Dist LEXIS 5116, at *13 (N.D. Ill. Mar. 25, 2004) (rejecting the argument that a debt collector could avoid liability for use of safe harbor language where the Seventh Circuit expressly limited the reach of the language to different claims).

47. The safe-harbor language used in <u>Exhibit A</u> was created specifically for cases where a debt collection letter stated a settlement date certain. Without a date certain, the language is false, deceptive, misleading, and confusing, and gives rise to FDCPA liability.

48. Moreover, FBCS' failure to provide an expiration date for its settlement offer is a material misrepresentation because it misleads the unsophisticated consumer about a material term of the settlement offer. *Evory*, 505 F.3d at 775-76; *see Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, *13 (W.D. Okla. Mar. 30, 2017) (because debt collector's purported time-sensitive settlement offer included an obviously misprinted expiration date that had already passed, "any consumer receiving [it] would be left to wonder about a material term of the offer, that is, the deadline for acceptance.").

49. The unsophisticated consumer, not knowing when the settlement offer expired, would feel intimidated into paying rather than questioning the demand for payment. *See Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629-30 (7th Cir. 2009) (confusing language alongside the debt validation notice necessarily distracts the reader from the notice of his statutory rights).

50. <u>Exhibit A</u> is also confusing and misleading as to the character of the debt and the name of the creditor to whom the debt is owed.

51. <u>Exhibit A</u> states:

> Please be advised that ownership of your below referenced FINGERHUT DIRECT MRKTING account transferred from WebBank to Bluestem Brands, Inc. and then transferred to our client Jefferson Capital Systems, LLC.

<u>Exhibit A</u>.

52. <u>Exhibit A</u> also states an "Account #" ending in 5096, a "File #" ending in 6055, and a "Current Creditor Account#" ending in 9965.

53. Upon information and belief, the "Account #" ending in 5096 was the account number associated with the debt when the account was owned by WebBank and/or Bluestem, Brands, Inc.

54. <u>Exhibit A</u> contains a payment remittance slip, which states only the "Account #" ending in 5096.

55. <u>Exhibit A</u> states that Plaintiff's "FINGERHUT DIRECT MRKTING" account was "transferred" from WebBank to Bluestem Brands, Inc. ("Bluestem"), and then "transferred" again to "our client Jefferson Capital Systems, LLC."

56. The unsophisticated consumer, upon seeing <u>Exhibit A</u>, would be confused and misled to believe the account had twice been sold as a defaulted debt, and that the debt would appear "toxic" on her credit report. Upon information and belief, Plaintiff's account was sold to Bluestem along with all other Fingerhut accounts, and was only sold as a defaulted debt once.

9

*See* http://www.businesswire.com/news/home/20130919005320/en/Bluestem-Brands-Announces-Agreement-Santander-Consumer-USA.

57. Alternatively, the unsophisticated consumer, upon seeing Exhibit A, would be confused and misled to believe the account had not been sold at all.

58. The unsophisticated consumer, seeing that the only portion of Exhibit A which is returned to the debt collector identifies the debt based on the account number associated with the original creditor would wonder whether the debt had actually been sold or if the original creditor still owned the debt.

59. The unsophisticated consumer, upon receiving Exhibit A, would be confused about the identity of the creditor to whom the debt was owed. *See, e.g., Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1119 n. 6 (9th Cir. 2014) (misidentifying the account number of a debt that has been sold can be a material false statement).

60. The unsophisticated consumer, upon receiving Exhibit A, would be confused about whether the account number had changed and whether a payment would be properly processed by the debt collector.

61. Plaintiff was confused by Exhibit A.

62. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

63. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibit A.

*The FDCPA*

64. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C

11

10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

65. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

66. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

67. 15 U.S.C. § 1692e(2)(A) specifically prohibits "the false representation of the character, amount, or legal status of any debt."

12

68. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

69. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

70. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

71. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

72. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

. . .

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

b) Disputed debts
. . .

> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

73. The Seventh Circuit has held that a debt collector must state the required disclosures in a non-confusing manner. *E.g., Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (debt collector must state the amount of the debt in a non-confusing manner).

74. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692g(a)(2) are the same. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016):

> Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.

75. Likewise, the Seventh Circuit has held that the standards for claims under 15 U.S.C. § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006):

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

## COUNT I – FDCPA

76. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

77. FBCS's letter is misleading and confusing to the unsophisticated consumer, in that it is unclear whether the amounts listed to be paid under the various payment options represent the total balance of the alleged debt or a settlement offer.

78. The unsophisticated consumer would have no idea what was the actual balance of the account or the amount of the settlement offer.

79. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT II – FDCPA

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Exhibit A contains false, deceptive, misleading, and confusing statements about the character of the debt and the identity of the creditor.

82. Exhibit A confusingly and misleadingly states to the unsophisticated consumer that Webbank "transferred" the debt to Bluestem Brands, Inc., which suggests to the unsophisticated consumer that the debt is being reported as toxic.

83. Exhibit A confusingly and misleadingly states the original creditor's "account number" in the payment remittance slip, which implies to the unsophisticated consumer that the debt was still associated with the original creditor.

84. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(2).

85. The unsophisticated consumer would have no idea what was the actual balance of the account or the amount of the settlement offer.

86. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692f, 1692f(1), and 1692g(a)(1).

## COUNT III – FDCPA

87. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

88. Exhibit A includes an offer that is misleading as to the amount necessary to effectuate the settlement and when the offer may expire.

89. Exhibit A includes false statements that mislead consumers to believe that any settlement offer made is a limited time offer and failure to accept the offer before its "expiration" would result in the debtors' inability to settle the debt for less than the full amount. *Evory*, 505 F.3d at 775-76.

90. Exhibit A includes threats to revoke the settlement offers at any time and without notice even though neither FBCS nor the creditor intended to revoke these offers and could not do so.

91. The confusing, misleading, and intimidating settlement offer also conflicts with and overshadows the debt validation notice.

92. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692f, 1692f(1), and 1692g(b).

## CLASS ALLEGATIONS

93. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent initial collection letters in the form represented by Exhibit A, (c) which listed different balances, (d) for the same account on the same day, (e) seeking to collect a debt for personal, family or household purposes, (f) between February 12, 2017 and February 12, 2018, inclusive, (g) that was not returned by the postal service.

94. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

95. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with the FDCPA.

96. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

97. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

98. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

99. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 12, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin

John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com